IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Wendy St. Clair,                                              Case No. 3:07CV03798

        Plaintiff

v.                                                            ORDER

Kroger Co.,

        Defendant

      This is a case arising under the Ohio Consumer Sales Practice Act [CSPA], O.R.C. § 1345, *et seq*., and the Uniform Commercial Code [UCC], as adopted in Ohio as O.R.C. § 1302, for fraudulent misrepresentation and breach of warranty, respectively. Plaintiff Wendy St. Clair alleges that Kroger Co., a national grocer headquartered in Cincinnati, Ohio, misled consumers by labeling beef products as "aged" when they in fact did not qualify for that designation.

      Jurisdiction exists under 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act [CAFA].[1] Pending is defendant's motion to dismiss. [Doc. 4]. For the reasons discussed below,

---

[1] As discussed below in Section I(B), I likely lose subject matter jurisdiction over plaintiff's individual claim once I dismiss her class action allegations.

defendant's motion shall be granted, except to the extent that plaintiff can show cause as to why I retain jurisdiction over her individual CSPA claim.

## Background

While shopping at Kroger Co., plaintiff purchased products labeled "aged beef" with the understanding that aged meat is superior to its unaged counterpart.[2] According to plaintiff, the process of aging improves the meat's quality and taste by allowing enzymatic activity to degrade complex proteins. The aging process also lowers the beef's moisture level, meaning that aged meat has more meat and less water. The United States Department of Agriculture [USDA] sets forth the requirements for "aged beef" in their Food Standards and Labeling Policy Book. [Doc. 1].

> The beef products (carcass or cuts) are maintained in a fresh unfrozen state for a minimum of 14 days from the day of slaughter. Aging claims made within the supply chain (e.g., prior to the point of sale at retail or food service) shall specify the minimum number of days aged and the type of aging used on the principal display panel on the label (e.g., "Wet aged for a minimum of ___ days."). If an aging claim is made at the point of sale to the consumer, the minimum claimed for aging shall appear on the principal display panel of the label (e.g., "Aged for a minimum of a minimum of ___ days.").

Kroger labels its beef products as "U.S.D.A. Choice Tender Aged Beef" [Doc. 1] and advertises them as such. St. Clair alleges that Kroger's beef products are not aged for fourteen days, but rather packed and shipped almost immediately after slaughter. She also asserts that defendant's labels do not specify the number of days that the beef has been aged, as required by USDA regulations. Finally, plaintiff argues that Kroger deliberately attempted to deceive consumers about the quality of its beef through its inaccurate labeling and marketing.

---

[2] For purposes of defendant's Rule 12(b)(6) motion to dismiss, I accept plaintiff's factual allegations as truthful. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2509 (2007).

On November 13, 2007, St. Clair filed this lawsuit under the CSPA and UCC in the Wood County, Ohio, Court of Common Pleas. She filed on behalf of herself and all other persons in the state of Ohio who purchased beef labeled as "aged" for personal, family or household purposes in reliance on Kroger's misrepresentation from November 1, 2005 to the present. St. Clair estimates that the class contains tens of thousands of Kroger shoppers. On August 31, 2007, Kroger removed the case to this court.

**Standard of Review**

Under Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, U.S. , 127 S.Ct. 1955, 1974 (2007). Plaintiff must offer "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988). Although the factual allegations in a complaint need not be detailed, they must sufficiently "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007); *Twombly, supra*, 127 S.Ct. at 1964-65.

In making this determination, I deem all factual allegations in the complaint to be true, *Tellabs, supra*, 127 S.Ct. at 2509, and "draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). It is not my function, at this stage, to weigh evidence or evaluate credibility. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

**1. Doctrine of Primary Jurisdiction**

The doctrine of primary jurisdiction applies when a court and administrative agency have concurrent jurisdiction over the same matter. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63 (1956). The doctrine allows a court either to dismiss a case or suspend its proceedings pending referral of relevant issues to an administrative body for review. *Id.* at 64; *Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 654 (1973) (staying case); *Pacific Chemical Products Co. v. Teletronics Services, Inc.*, 29 Ohio App.3d 45, 49-50 (1985) (upholding dismissal).

Courts only apply the doctrine if there is a "desire for uniformity of regulation" and "need for an initial consideration by a tribunal with specialized knowledge." *Kocolene Oil Corp. v. Ashland Ohio, Inc.*, 509 F. Supp. 741, 743 (S.D. Ohio 1981). "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Western Pacific Railroad Co.*, *supra,* 352 U.S. at 64.

Kroger argues that the USDA's authority to regulate the labeling of meat products makes it a more appropriate place for adjudication and urges me to dismiss plaintiff's claims.[3] I disagree and conclude that the doctrine of primary jurisdiction is not appropriate in this case.

---

[3] Kroger cites the USDA's authority under the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*, to indicate the Administration's responsibility to ensure that the labeling affixed to meat products is truthful and not misleading.

**A. Specialized Knowledge**

Primary jurisdiction is appropriate if the case involves "technical or policy considerations which are beyond the court's ordinary competence and within the agency's particular field of expertise." *MCI v. AT &T*, 496 F.2d 214, 220 (3d Cir. 1974).

Kroger cites two decisions invoking the doctrine of primary jurisdiction – in both cases, the parties asked the court to interpret or redefine an agency specification. In *Kocolene, supra,* 509 F. Supp. at 742 , the dispute turned "on an interpretation of the word 'purchase' as it is used in the Code of Federal Regulations." Similarly, in *Public Citizen v. Foreman*, 471 F. Supp. 586, 594 (D.D.C. 1979), plaintiff asked the court to determine how the color effects of nitrite in bacon fit in the USDA's prohibition of food additives that "impart[] color."

Kroger urges me to apply the doctrine of primary jurisdiction because the term "aged" is used "in a peculiar or technical sense" requiring extrinsic evidence "to determine [its] meaning and proper application." *See Kocolene, supra,* 509 F. Supp. at 744. I disagree.

Determining whether Kroger marketed and labeled its beef in a false and misleading way does not require specialized knowledge of the meat industry or the body of regulations of the USDA. My role – and the role of the jury – is to determine whether Kroger complied with already clear regulations.[4] Although this claim requires that I look at USDA standards, it differs from the cases cited by defendant, as it does not require the USDA to explain its own regulation or interpret a complex body of regulatory law. At this stage, there is no indication that a jury could not handle its task.

---

[4] As noted above the background section, the USDA defines beef to be aged, in part, when "beef products (carcass or cuts) are maintained in a fresh unfrozen state for a minimum of 14 days from the day of slaughter." Food Standards and Labeling Policy Book. [Doc. 1].

Kroger asserts that trial would involve expert testimony, which, in its view, would take this case out of the realm of ordinary fact finding and into areas of agency responsibility. At this stage, this prediction appears rather dubious. But even if I accept it as accurate, the mere fact that jurors might have to hear and consider expert testimony is no reason, without more, to conclude that they will be incapable of making accurate factual findings. The putative need for expert testimony does not require invocation of the doctrine of primary jurisdiction.

In any event, nothing in this case, as presently projected, appears in any way to involve refining/redefining agency regulations.

The decision in *Kocolene* is readily distinguishable. In that case, the dispute was pending before the Department of Energy. Though acceding to an agency's primary jurisdiction is not mandatory even in that circumstance, the doctrine is perceptibly more applicable where an administrative agency is already engaged and conducting proceedings involving the same question as a court. *Id*. at 743. The dispute in this case, unlike the situation in *Kocolene*, is not pending before an administrative body.

### B. Administrative Uniformity

Courts also invoke primary jurisdiction to ensure nationwide uniformity in the application of federal regulations. *See Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 439 (1907) (finding that uniform rates could not be achieved if judges and juries throughout the country were to determine the reasonableness of a carrier's established rate schedule); *Kocolene, supra*, 509 F. Supp. at 743 ("Primary jurisdiction reference to an agency is favored when it will promote even-handed treatment and uniformity in a highly regulated area and when sporadic action by federal courts will disrupt an agency's delicate regulatory scheme.").

I disagree with Kroger's contention that permitting the USDA to consider plaintiff's contentions before this case proceeds would enhance regulatory uniformity. The question presented here is not one that would affect uniformity – it is a question of applying the facts, whatever they may be, to an already established standard. This is a fact-intensive inquiry that will not affect the national interpretation of labeling requirements. Based on the foregoing, I conclude that this case need not be referred to the USDA for determination and resolution.

### 2. Ohio Consumer Sales Practices Act [CSPA]

The CSPA prohibits suppliers from committing an "unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02(A). The Act provides a non-exhaustive list of prohibited deceptive behavior. O.R.C. § 1345.02(B).

### A. Plaintiff's Class Action Allegations Fail for Lack of Notice

To pursue a violation of the CSPA on behalf of a class, plaintiff must allege that Kroger had prior notice that its conduct was "deceptive or unconscionable." O.R.C. § 1345.09(B); *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St. 3d 5, 7-8 (2006). The prior notice may be in the form of a rule adopted by the state Attorney General or a judicial decision made publically available. O.R.C. §§ 1345.05(A)(3), 1345.05(B)(2); *Marrone, supra,* 110 Ohio St. 3d at 7-8. Lack of prior notice requires dismissal of class action allegations. *Bower v. International Business Machines, Inc.*, 495 F.Supp.2d 837, 841 (S.D. Ohio 2007).

Because plaintiff's complaint neither refers to a rule or judgment placing Kroger on notice of its deceptive act, her class action shall be dismissed. *See City of Findlay v. Hotels.Com, L.P.*, 441 F. Supp. 2d 855, 863 (N.D. Ohio 2006) (dismissing claim where plaintiff failed to allege two prerequisites set forth in § 1345.09(B)); *Johnson v. Microsoft Corp.*, 155 Ohio App.3d 626, 636-38

(2003) (upholding dismissal of a class action CSPA claim under Rule 12(b)(6) in part because the plaintiff failed to plead either notice element).[5]

### B. Plaintiff's Individual Claim Fails for Lack of Jurisdiction

The parties dispute whether St. Clair adequately asserted her claim under *Twombley, supra*,127 S.Ct. at 1974, and whether Fed. R. Civ. P. 9(b) applies in this case. I do not, however, have jurisdiction to answer these questions.

The Class Action Fairness Act provides federal jurisdiction in class action claims with over five million dollars in controversy and minimal diversity. 28 U.S.C. § 1332(d)(2). Although the Act is silent as to whether a federal court retains jurisdiction over an individual matter after the court has dismissed a class action or denied class certification, the court in *Hoffer v. Cooper Wiring Devices,*

---

[5]

St. Clair requests leave to amend her original complaint so that she can assert that Kroger had notice. In her memo in opposition of defendant's motion to dismiss, plaintiff argued that Kroger had notice based on two USDA publications, Ohio Admin. Code § 109:4-3-10 and the statute itself. I do not find her arguments persuasive, so I see no reason to grant further leave to amend.

First, the CSPA clearly defines the proper methods to provide defendant with notice and USDA publications are not included. Next, Ohio Admin. Code § 109:4-3-10, in part, finds it to be a deceptive act or practice to "make any representations, claims, or assertions of fact . . . which would cause a reasonable consumer to believe such statements are true . . . unless . . . the supplier possesses or relies upon a reasonable basis in fact . . . which substantiates such representations, claims, or assertions of fact." The Ohio Supreme Court found this rule too generic to provide defendant with notice because it does not refer to a particular act or practice. *Marrone, supra*, 110 Ohio St.3d at 10 ("To permit a generic rule to constitute prior notice for purposes of [Rev. Code §] 1345.09(B) would allow any previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice.").

Finally, St. Clair asserts that Kroger had notice based on the Act's statutory language declaring it deceptive for a supplier to state that "the subject of a consumer transaction is of a particular standard, grade, style, prescription, or model, if it is not." O.R.C. § 1345.02(B)(2). This statement, however, is a general rule insufficient to put a reasonable person on notice of the prohibition against a specific act or practice. *See Marrone, supra*, 110 Ohio St.3d at 10. If such a generic statement met the statute's requirement, this would obviate the need for specificity and place all businesses on notice. *Id.*

*Inc.*, 2007 WL 2891401, *1 (N.D. Ohio) dismissed plaintiff's individual CSPA case for want of subject matter jurisdiction once it had dismissed plaintiff's class claims. *Id.* The court refrained from "announcing a general rule," but the facts in this case are sufficiently similar to render its narrow holding applicable. *See id.* at *2.

In light of *Hoffer*, dismissal *sua sponte* of the plaintiff's individual claims under the CSPA appears appropriate. I shall, however, give plaintiff leave to undertake to show cause as to why I continue to have subject matter jurisdiction over her individual claim. In the alternative, plaintiff can accept dismissal of her individual CSPA claim without prejudice.

### 3. Breach of Warranty Under the Uniform Commercial Code [UCC]

To state a claim for breach of warranty under the UCC, plaintiff must plead that: 1) a warranty existed; 2) the product failed to perform as warranted; 3) plaintiff provided defendant with reasonable notice of the defect; and 4) plaintiff suffered injury as a result of the defect. *Litehouse Products, Inc. v. A.M.I. Int'l, Ltd.*, 1984 WL 4539, *3 (Ohio Ct. App.).

#### A. Plaintiff Failed to Plead Pre-Litigation Notice

If a plaintiff fails to plead pre-litigation notice, her breach of warranty claim must be dismissed. O.R.C. § 1302.65(C)(1) ("the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). St. Clair's failure to notify Kroger of its alleged breach before bringing this lawsuit precludes her from proceeding further with her claim. *See Radford v. Daimler Chrysler Corporation*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (dismissing plaintiff's breach of implied warranty claim "[b]ecause plaintiff makes no allegation in her complaint that she provided defendant with [§ 1302.65] notice");

*Jones v. Davenport*, 2001 WL 62513, \*8 (Ohio App.) (barring plaintiff from recovering under an express warranty theory because he failed to notify defendant of the breach).

Plaintiff argues that, despite her failure to provide pre-litigation notice, her claim should proceed because Kroger had "actual knowledge" of its breach of warranty.

I disagree. Even if Kroger had independent knowledge of its alleged breach, this does not satisfy the statute's requirement for pre-litigation notice. *See Radford*, *supra*, 168 F. Supp. 2d at 754 (dismissing implied warranty claim because plaintiff failed to allege § 1302.65 notice, despite plaintiff's assertion that defendant was actually aware of the defect at issue). Given the reasons for the notice requirement, defendant's potential knowledge of a breach differs from third party notification under O.R.C. § 1302.65(C)(1).[6] *See Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978) (explaining the notice requirement: "Notice of breach serves two distinct purposes. First, express notice opens the way for settlement through negotiation between the parties. Second, proper notice minimizes the possibility of prejudice to the seller by giving him ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.").

---

[6]

Plaintiff cites a non-binding Illinois state court decision *Connick v. Suzuki Motor Co., Ltd.*,174 Ill.2d 482, 493-94 (1996) to argue that a defendant's "actual knowledge" can satisfy the UCC's notification requirement. This judicial acknowledgment is limited, however, to situations where the defendant's knowledge is of "trouble with the particular product purchased by a particular buyer." *Id.* The court found the defendant's actual knowledge to be "insufficient to fulfill plaintiffs' UCC notification requirement." *Id.* Even if Kroger had some level of actual knowledge, it was not sufficiently particular to satisfy the notification requirement.

11

St. Clair further argues that she satisfied the notification requirement by filing her complaint.[7] The policy reasons for pre-litigation notice are not satisfied by the filing of a complaint. I conclude that plaintiff's failure to provide defendant with pre-litigation notification requires dismissal of her UCC claim.

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1. Defendant's motion to dismiss plaintiff's class action claim under the CSPA be, and the same hereby is granted;

2. Leave be, and the same hereby is granted to the plaintiff to show cause by October 31, 2008, why her individual claim under the CSPA should not be dismissed or to file a notice of dismissal without prejudice by said date; if plaintiff does not dismiss such claims, defendant shall file a response to plaintiff's show cause showing by November 17, 2008; plaintiff to reply by December 1, 2008; and

3. Defendant's motion to dismiss plaintiff's claim under the UCC be, and the same hereby is granted.

So ordered.

                                                                        s/James G. Carr
                                                                        James G. Carr
                                                                        Chief Judge

---

[7] Plaintiff cites *Solarz v. DaimlerChrysler Corp.*, 2002 WL 452218, *11 (Pa. Com. Pl. 2002) and *Allstate Ins. Co. v. DaimlerChrysler Corp.*, 2004 WL 442679, *2 (N.D. Ill. 2004) to argue that her complaint served as requisite notice. Not only are these cases not binding, they are easily distinguished as claims for personal injury, not breach of warranty. Public policy dictates different treatment for such issues. *See Connick, supra,* 174 Ill.2d at 495 (". . . where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit.").